## HAMLET vs. JOHNSON.

1. Where one of several residuary legatees, who take in common, dies before the testator, his legacy, which lapses by his death, does not survive to his co-legatees, but descends to the testator's next of kin under the statute of distribution, and no interest in it passes to one who takes a life estate by implication in the residuum.

2. On petition to the probate court for the distribution of slaves not disposed of by will, if the number of distributees exceeds the number of slaves to be divided, the court may order a sale in the first instance, without the appointment and report of commissioners.

APPEAL from the Court of Probate of Madison.

In the matter of the petition of Daniel Johnson, as trustee of Sarah Johnson, against Mrs. Phebe Hamlet, as executrix of Robert Hamlet, deceased, who was the father of said Sarah, for distribution of a lapsed legacy.

The only clauses of the testator's will which have any bearing on the questions presented in the case, are the third and the twelfth, which are as follows :

" 3. I give to my wife, Phebe Hamlet, and her lawful executors, in special trust and confidence, and for the uses, intents, and purposes hereinafter mentioned, that is to say, for the support and maintenance of my son Richard G. Hamlet, for and during his single life ; and should my son Richard G. Hamlet marry, then, in that event, he shall take the slaves hereinafter mentioned into his possession ; and the property given in trust to my wife, Phebe Hamlet, trustee, shall be as follows, viz., one negro man named Dick, and one negro man named Ben."

" 12. I also give to my wife, Phebe Hamlet, all my stock of every description, farming utensils, house and kitchen furniture, wagons, barouche, &c., for and during her natural life, or during her widowhood ; and at the death or marriage of my wife, it is my will that the whole of my property then remaining, both real and personal, and not specifically willed away to any of my children, shall be sold, and the proceeds thereof shall be equally divided amongst all my children."

This will was admitted to probate on the 5th August, 1847,

and the widow qualified as executrix, but the record nowhere shows the date of her appointment. Richard G. Hamlet, the legatee named in the third clause of the will, died before the testator, but subsequent to the execution of the will, and was never married.

The record does not show when the petition in this case was filed, but the citation to the widow was issued on the 20th January, 1853. The petition, in addition to the facts above stated, alleges, "that the testator left ample means for the payment of all his debts, without the sale of the said slaves Dick and Ben, and that they are and ever have been subject to division amongst the heirs of said Robert Hamlet, deceased"; also, "that the said testator left a widow and six surviving children, of whom the said Sarah Johnson is one, and that she is entitled to a distributive share of the said lapsed legacy." The prayer of the petition is, "that the said executrix may be required to show cause why the said lapsed legacy shall not be distributed according to law, and that all such other and further proceedings may be had as are requisite to accomplish the object of this petition."

On the final hearing of the petition, as the bill of exceptions states, "it was shown on the part of the defence, that the testator's will specifically mentioned all the property possessed by him at his death, except four negroes, viz., Ellen, twelve years of age, Lucy Neal, and Caroline, each one year old, and Charley, three months old, and the then growing crop, besides a few other inconsiderable articles; that as such executrix, she (Mrs. Phebe Hamlet) had, at the September term, 1849, filed her accounts and vouchers for a final settlement, which settlement was made, in due form of law, at the October term thereafter; that everything not specifically disposed of in said will, except said four negroes and the two in controversy, had been sold in due course of administration; that the proceeds of said sale proved insufficient to pay the indebtedness of said estate; that on said settlement in 1849, a balance was declared in her favor, as due from said estate, of the sum of $816 30; that she was still a widow, and that the said executrix had held said negroes since the death of the said testator, claiming to hold them during her life or widowhood. The said defendant did not answer or plead to said

petition in form, but, without objection from petitioner, insisted on the matters of law arising on said facts, as barring the petitioner's right to recover. The court, however, thought and ruled, that the petitioner had a right to recover, and decreed accordingly; to which the defendant excepted."

The decree of the court recites, that it appeared to the satisfaction of the court that the slaves described in said lapsed legacy were subject to distribution amongst the heirs-at-law of said testator, and that they could not be fairly divided without a sale thereof; and the executrix is accordingly ordered to sell them, on a credit of six months.

The executrix, who is now appellant, assigns for error—

"1. The court erred in granting the prayer of the petition.

"2. The court erred in the decree rendered.

"3. The court erred in proceeding to a final decree without all interested in the estate having been brought before it.

"4. The court erred as shown in the bill of exceptions."

ROBINSON & JONES, for the appellant:

1. Richard G. Hamlet having died in the lifetime of the testator, the bequest to him, embracing the slaves in controversy, lapsed. The first question, then, is, Did these slaves go to the distributees, unaffected by the will, or did they pass under the general residuary clause? A lapsed or void legacy of personal property passes under the residuary clause.—Roberson v. Roberson, 21 Ala. 275; 4 Barb. S. C. Rep. 82; Ward on Legacies, p. 30. So, also, all that turns out to be not well bequeathed passes under the residuary clause.—21 Ala. 275; Leake v. Robinson, 2 Mer. 392; Jackson v. Kelly, 2 Ves. 285; Brown v. Higgs, 4 ib. 708; Roberts v. Cooke, 16 ib. 451. And it makes no difference, that the residuary bequest is of "the rest and residue not before particularly and specifically disposed of."—Roberts v. Cooke, supra; Brown v. Higgs, supra; Ward on Leg., p. 31-2; 2 Wms. Ex. 1251.

2. These slaves falling into the residuum, the next question is, whether they belong to the widow for life under the twelfth clause, or pass to the executrix under the latter branch of that clause. The decision of this question either way is fatal to the claims of the petitioner. The appellant claims, 1st, that the will gives her a life estate in these negroes, and all

others not disposed of by the will, by implication; and insists, 2dly, that if this is not so, she is entitled to them as executrix until her death or marriage, at which time they must be sold, and the proceeds of sale divided among the children. This latter view is strengthened by the sixth clause, in which the testator provides, that if a negro given to his grand-son Richard should die before the legatee arrives at full age, the executors shall buy him another; thus recognizing the idea that they were to have funds in their hands as such.—Chighizola v. LeBaron, 21 Ala. 407.

3. The evidence shows that the widow had had possession of these negroes for more than six years, claiming to hold them as her own during the term of her natural life. Her title, therefore, for that period, became good against the world under the statute of limitations.

4. But if the petitioner be entitled to a distributive share of the property, the court erred in ordering a sale of it. There were, according to the petition, six negroes and six distributees; and hence the presumption is that they could be divided. But if the truth was that they could not be divided, there was but one way in which that fact could be made known to the court : commissioners should have been appointed to make a division, and upon their report that a division could not be made, which fact might have been contested by any of the other children, the court should have made an order of sale; but the court could not order a sale on the application of one of the distributees, without the others being made parties, or without their having an opportunity to contest the same.—McCurry v. Hooper, 12 Ala. 826; Murray & Durand v. Tardy, 19 ib. 710.

BRICKELL & CABANISS, contra.

CHILTON, C. J.—By the 12th item of this will, the whole of the testator's property remaining after the death or marriage of his wife, and not specifically willed away to any of his children, is required to be sold by his executors, and the proceeds to be equally divided among all the children of the testator. The bequest to Richard of the two slaves lapsed by his death before the will took effect; and the question is,

whether these slaves fall into the residuum created by the 12th item, or whether the testator is to be regarded as having died intestate as to them.

It seems to be well settled, and we have so expressly declared the law to be, that where one of several residuary legatees dies before the testator, and the residuary estate given to them is to be held by them in common, his portion does not survive to his co-legatees, but goes to the testator's next of kin according to the statute of distribution.—See Bendall's Distributees v. Bendall's Adm'r, 24 Ala. 309, and authorities there cited. The case before us falls within this category. The residuary legatees, who are the testator's children, hold in common. With us there can be no joint estate technically, for the right of survivorship is taken away by our statute, existing long before the will was made; and the deceased child, Richard, is one of the persons intended by the testator, when he prepared his will, to take as one of the residuary legatees. According, then, to the settled rule, his interest, having lapsed by his death before the death of the testator, remains to be distributed as in case of intestacy.

We think it is very clear, that in order to give the widow a life estate by implication, or an estate during her widowhood, the will must create an interest in the residuary legatees in the remainder. In other words, if the children, who are to take the proceeds of the sale of all the property not specifically bequeathed, to be derived from a sale of such property required by the will to be made upon the death or marriage of the widow, can take no interest in these slaves bequeathed to Richard, then there is no life estate, or estate *pendente viduitate*, in Mrs. Hamlet. For the particular estate, if it results at all, attaches to or grows out of the bequest of the property in remainder to the children; and if the principal estate is not created by the will, no implication raising the particular or immediate interest can be indulged—the principal failing, that which is but the incident must fail.

2. The only remaining question is, whether the court proceeded regularly in ordering a sale of the slaves for the purpose of making distribution.

It is said, the distribution is not to be made until the death or marriage of the widow, and that the sale and distribution

of the proceeds of these slaves are premature. This objection, however, presupposes that the slaves, so sold, pass under the will, and are therefore to be governed by its provisions; whereas, we have shown, that as to this property, the testator must be regarded as dying intestate, and consequently the court must dispose of them as though no will had been made.

It does not appear when the petition in this case was filed. The citation to the widow issued the 20th January, 1853. Assuming that the petition was filed on that day, the possession of the widow must be considered as commencing from the time the will was admitted to probate, namely, the 5th of August, 1847; for, until that time, there was no one who could consent to the legacy of the slaves in question, conceding that they passed to the widow under the 12th item of the will. Claiming, as she does, under the will, her rightful possession could only accrue upon proof of the will and qualifying as executrix; so that her possession could not have given her a title before the petition was filed, (six years not having intervened between the probate and the application for distribution,) even conceding that she could set up an adverse claim to the rightful distributees, which we do not decide.

It is clear that an equal distribution could not have been made of these slaves without a sale. There are six distributees (children) and a widow, among whom the proceeds are to be divided, and but six slaves, including those remaining with the executrix and not mentioned in the petition. The Probate Court might well, therefore, have ordered the sale, as six negroes could not be divided into seven shares. There was no need that this fact should have been certified to him by commissioners appointed to make the distribution.

Let the decree be affirmed.