## STALLWORTH vs. STALLWORTH.

[APPEAL FROM FINAL DECREE OF DISTRIBUTION ON SETTLEMENT OF ESTATE.]

1. *Statute of descent and distribution (Code, §§ 1572–76) construed.*—When an intestate leaves no children or their descendants, the children of a deceased brother or sister of the half blood occupy "the same degree" of relationship

as the surviving brothers and sisters, and take, by right of representation, the share which their ancestor, if living, would have taken.

2. *Code construed by previous judicial decisions.*—The re-enactment in the Code of a previous statute must be taken as a legislative adoption of the judicial construction which it had received.

APPEAL from the Probate Court of Monroe.

IN the matter of the final settlement of the estate of Eldridge G. Stallworth, deceased, who died intestate, leaving as his heirs-at-law and distributees several brothers and sisters, both of the whole and half blood, and several nephews and nieces, who were the children of deceased brothers and sisters of the half blood. In the final decree of distribution, the court held that these nephews and nieces, by right of representation, were entitled to the share which their ancestor, if living, would have taken; and to this ruling the other distributees excepted. This is the only matter assigned as error.

R. C. TORREY, for the appellants.

E. S. DARGAN, *contra.*

STONE, J.—Eldridge G. Stallworth died in 1854, intestate, without child or widow, he never having married, but leaving brothers and sisters, some of the whole, and some of the half blood, him surviving. He also left, surviving him, nephews and nieces, children of deceased brothers and sisters of the half blood. The property of which intestate died the owner, was derived from N. Stallworth, father of intestate, who was also father of the surviving brothers and sisters, both of the whole and half blood, and grandfather of the nieces and nephews, children of the deceased brothers and sisters of the half blood; the two classes of children having a common father, but different mothers.

The record does not inform us whether the estate of the intestate consisted of real or personal property, or a part of each. This, however, we regard as unimportant, as each species of property is governed by the same rules of descent, so far as the rights of these parties are concerned.—Code, § 1581.

Our statutes of descent may be found in part II, title 4, chapter 1, of the Code, beginning with section 1571. So far

as we can now perceive, they create in themselves a complete system, governing every conceivable case; and hence the common law sheds no light on our path, save that which emanates from its definitions and rules of construction.

The rules of descent from intestates who leave no widow, and whose debts are first paid, as they bear on this case, are declared in the following sections of the Code :

§ 1572, subdivision 2.—"If there are no children or their descendants, then to the brothers and sisters of the intestate or their descendants, in equal parts."

§ 1573.—"Under the provisions of the preceding section, the lineal descendants, in equal degree, represent their ancestor; that is, the children of a deceased child, brother or sister of the intestate, are entitled to inherit, in equal parts, the same share which such deceased child, brother or sister, would have inherited if living; the grand-children of such deceased child, brother or sister, taking in equals parts the same share their parents would have inherited, if living."

§ 1574.—"There is no representation among collaterals, except with the descendants of the brothers and sisters of the intestate."

§ 1576.—"There is no distinction made between the whole and the half blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift, from or of some one of his ancestors; in which case, all those who are not of the blood of such ancestor are excluded from the inheritance, as against those of the same degree."

The property in this case came to the intestate from an ancestor, who was common to all the claimants. The common law, deriving its precepts, in a great degree, from the feudal system, made a distinction, as to the descent of real estate, between kindred of the whole and of the half blood. The reason for such distinction has passed away, with the decay of that system; and in most of the States composing this Union, the distinction itself has been, in a great degree, abolished.—See 2 Bla. Com. 220–224; 3 Bac. Abr. by Bouvier, 130. As to personal property, the English statute of distributions recognized no distinction between kindred of the whole and half blood.—2 Bla. Com.; 2 Kent's Com. 424–5; Crooke and Wife v. Watt, 2 Vern. 124.

As early as 1806, the legislature of this State, then a territory, abolished the distinction, in the descent of real estate, between kindred of the whole and the half blood, "except that kindred of the whole blood, in equal degree, shall be preferred to the kindred of the half blood in the same degree."—Clay's Digest, page 168, § 2.

The statute above referred to remained our law of descents until the adoption of the Code, a period of over forty years, with no other alteration or addition than a provision for escheats. The codifiers, so far as the rights of these parties are concerned, retained and continued of force all the provisions of the act of 1806, except that they abolished the distinction between kindred of the whole and half blood, unless the inheritance came to the intestate from some ancestor who was of the blood of one, but not of the other class. Gardner v. Collins, 2 Peters, 58; Delaplains v. Jones, 3 Hals. 340; Brown v. Burlingham, 5 Sandf. 418.

As the lands and personal estate of an intestate, who dies leaving no widow, pass in the same proportion, and to the same persons as heirs and distributees, this record presents the single question, Do the children of the deceased half brothers and sisters stand in "the same degree" of relationship to the intestate, as the living brothers and sisters? This depends on the further inquiry, Do sections 1573 and 1574 embrace and qualify the rights intended to be secured by section 1576?

It is our opinion, that the entire chapter of the Code, in which these sections are found, must be construed as a system, a controlling object of which is, to enforce equality in descents and distributions, and to obliterate, except in a single instance, the feudal boundary of whole and half blood.

The terms "representation," and "right of representation," as found in the statutes, are of no modern origin. Their import is clearly defined, viz., "that these representatives take neither more nor less, but just so much as their principals would have done."—3 Bla. Com. 216–7; 2 Kent's Com. 424–5–6. Representatives stand in the same relationship— the same "degree of kindred," to the person "last seized," as the person they represent. They take *per stirpes*. The Code, copying the act of 1806, continues this right of representa-

tion to "the descendants of brothers and sisters of the intestate."

At an early day, this court gave a judicial exposition of the act of 1806; deciding that the descendant of a deceased brother or sister stood in the same degree of relationship to the intestate as the brother or sister, if living, would have done.—Hitchcock v. Smith, 3 Stew. & Por. 28.

The authorities to the same point, from our sister States, are so abundant, that a reference to even a majority of them would encumber this opinion.—McGregor v. Comstock, 3 Coms. Rep. 408; Parker v. Nims, 2 N. Hamp. 460; Sheffield v. Lovening, 12 Mass. 490; Dexter v. Dexter, 4 Mason, 302; Rosevelt v. Thurman, 6 Johns. 322.

Any other construction than that above expressed, will leave section 1574 with nothing to operate on, and without object or aim. A further reason, if necessary, in favor of this view, may be found in the fact, that after the construction in Hitchcock v. Smith, *supra*, of the act of 1806, had stood as the settled law of the land for near twenty years, the same provision, in the same language, is transferred to the Code. This must be understood as a re-enactment of the statute of 1806, with its construction.—Duramus v. Harrison, 26 Ala. 326. It is thus shown, that the children of the deceased half brothers and sisters, by right of representation, stand in equal degree of relationship to the intestate, with the surviving brothers and sisters, both of the whole and half blood; and that *per stirpes*, they are entitled to the distributive shares in the estate, which their parents would have received if in life.

We have, in this · opinion, taken no notice of the word "inheritance," as found in section 1576. The effect of that word is, to limit the qualified preference of the whole over the half blood, to estates which the intestate *inherited*, as contradistinguished from those otherwise acquired by him. The record does not inform us whether Eldridge G. Stallworth acquired his estate from N. Stallworth, his father, by descent, or by purchase. This, as we have seen, is a question of no importance in this case.

The decree of the probate court, being in strict conformity with the views above expressed, is affirmed.