35 521
93 403

## JOHNSON *vs.* COPELAND'S ADM'R.

[FINAL SETTLEMENT AND DISTRIBUTION OF DECEDENT'S ESTATE.]

1. *Domicile of infant.*—The domicile of an infant, four or five years of age, whose father was a resident citizen of this State at the time of his death, and who has a guardian appointed by the proper court here, but whose mother, after marrying a second time, removes with her husband to another State, carrying the infant with her, without the consent of the guardian, and remains there until the death of the infant, at eight years of age,—is not affected by such change of residence, but continues in this State up to the time of her death.

2. *Conflict of laws as to distribution of decedent's personal estate.*—The personal estate of an intestate must be distributed according to the law of the State of his domicile, notwithstanding his death in another State.

3. *Descent and distribution among whole and half-blood.*—On the death of a child intestate, the bulk of whose estate consists of slaves which he derived by descent from his father, such slaves are to be distributed among his brothers and sisters of the half-blood on the father's side, to the exclusion of brothers and sisters of the half-blood on the mother's side, (Code § 1576 ;) but the money accruing from the hires of these slaves, after they had been distributed to the intestate, is to be distributed equally among all his brothers and sisters.

APPEAL from the Probate Court of Limestone.

In the matter of the final settlement and distribution of the estate of Sarah M. Copeland, deceased, by Nathan W. Copeland, her administrator. The bill of exceptions shows, that John A. Johnson, as the guardian of Margaret and Laura Menifee, claimed a distributive share of said estate for each of his said wards ; that his claim was resisted by the administrator ; and that on the trial of the issue joined between them, "the following facts were proved."

"William Copeland, the father of said Sarah M. Copeland, departed this life, intestate, in said county of Limestone ; leaving in said county a large real and personal estate, and the following heirs-at-law, to-wit, Nathan W. Copeland, Sarah M. Copeland, and Mary J. Copeland, who afterwards married one Edmund J. Wright. On the 6th August, 1849, one William Crenshaw, a resident

34

citizen of said county, qualified as the administrator of said William Copeland. In December, 1849, the slaves belonging to the estate of said William Copeland were divided by commissioners appointed by the probate court of said county, and the following slaves were allotted to the said Sarah M. Copeland, to-wit, Adam, Crisby, Joe, Edmund, Isaac, Hannah, Grundy, and Adeline; the other property belonging to said estate being sold to pay debts, and for distribution. On the 12th November, 1849, one William S. Wimberly, a resident citizen of said county of Limestone, qualified in the probate court of said county as the guardian of said Sarah M. Copeland, who was then about three years old, and continued as such until her death, which occurred about the 1st June, 1854, when she was about eight years old.

"On the 29th April, 1851, Sarah Copeland, the mother of said Sarah M., and the widow of said William Copeland, married one Joseph Menifee, and, shortly after said marriage, removed to Tennessee, taking with them the said Sarah M. Copeland, then about four years of age; but without having obtained the consent of the said William Wimberly, the guardian of said Sarah M., as to her removal to Tennessee. The said Sarah M. Copeland departed this life, on the 1st June, 1854, at the residence of said Menifee and wife in the State of Tennessee, while they continued to reside there, and while she was living with them. The said Sarah M., at the time of her death, had the following sister and brother of the half-blood by her father's side, to-wit, Nathan W. Copeland and Mary J. Wright; and the following sisters of the half-blood by her mother's side, to-wit, the said Margaret and Laura Menifee. All the property which the said Sarah M. owned at the time of her death was received from the estate of her father, the said William Copeland, except the sum of $341, which had been made by her said guardian, after paying all her debts and expenses, by hiring out the negroes, and loaning out the money received from her said father's estate. The said Nathan W. Copeland qualified as the administrator of the said Sarah M. on the 25th September, 1854; and the said Wimberly, as the guar-

dian of said Sarah M., paid over to the said Nathan Copeland, as such administrator, all the money and property of his said ward.

"The statutes of distribution of Tennessee, as printed in a book purporting on its face to be printed by the authority of said State, were read in evidence; section 2429 being in the following words: 'The personal estate, as to which any person dies intestate, after payment of the debts and charges against the estate, shall be distributed as follows. * * * 5. If no father, to the mother and brothers and sisters, or the children of such brothers and sisters representing them, equally; the mother taking an equal share with each brother and sister. 6. If no brothers and sisters, or their children, exclusively to the mother; if no mother, exclusively to the brothers and sisters, or their children representing them.'

"This being all the proof in the cause, the said Margaret and Laura Menifee, through their said guardian, moved the court to allow them to participate equally in the distribution of said estate with the said Nathan W. Copeland and Mary J. Wright; which motion the court refused, and ruled that they were entitled to no share of said estate; to which ruling of the court the said Margaret and Laura Menifee, through their counsel, excepted. The said Margaret and Laura, through their guardian, then moved the court to allow them to share equally with the said Nathan W. Copeland and Mary J. Wright in the said sum of $341 above described, together with whatever interest may have accrued upon said sum, after defraying its proper share of the expenses of the administration of said estate; which motion the court also refused and overruled, and the said Margaret and Laura excepted to its ruling."

These two rulings of the probate court are now assigned as error.

WM. H. WALKER, for appellant.—1. The domicile of the intestate, at the time of her death, was in Tennessee. The letters of guardianship granted to Wimberly were of the estate, and not of the person.—Code, § 2014; 8 Porter,

198. The domicile of the mother, whether she be married or single, must necessarily determine that of the child. On this point, see 3 Mer. 67; 1 Binney, 349; 2 Watts & S. 568; 9 Mass. 543; 5 Pick. 20; 10 Maine, 356; 8 Blackf. 345; 18 Ga. 5. As to the construction of the Tennessee statute of distribution, see 3 Sneed, 183; also, 9 Foster, 453.

2. Whatever may be the decision as to the question of domicile, there can be no doubt of the appellants' right to share equally with the other distributees in the $341 accruing from the hire of the intestate's slaves.—Code, § 1576; 9 Foster, 453.

ROBINSON & JONES, contra.—1. Alabama was the place of the intestate's birth, the location of her guardianship, and the residence of her father at the time of his death; and it was, therefore, the place of her native domicile. Story's Conflict of Laws, § 46; 8 Blackf. 345; 11 Humph. 536; 3 Mer. 79. Under the circumstances of this case, as disclosed by the record, the mother could not change the domicile of the child—1st, because the child had a guardian here, who was entitled to the possession and control of her property, and the same could not be brought under the jurisdiction of the Tennessee law; 2d, because a change of domicile would have affected the right of succession, and thereby operated a fraud; and, 3d, because the mother had lost her own volition by her second marriage, while her husband thereby acquired no rights of control over her children. These principles are sustained by the following authorities: Cook v. Wimberly, 24 Ala. 487; 8 Blackf. 345; 3 Mer. 67; 11 Humph. 536; 30 Ala. 623. Alabama being the intestate's domicile, the law of Alabama must govern the succession of her estate; and by that law the appellants are excluded from all interest in the slaves.—Code, § 1576.

2. The money accruing from the hire of the intestate's slaves, and remaining in the hands of her guardian uninvested, must be regarded as a part of, and incident to the inheritance. The statutory distinction is between ancestral estates, which come to the intestate by inheritance,

and new acquisitions acquired by his own exertions and industry.—15 Barb. (Ark.) 587. The intestate was an infant of tender years, incapable of industry or exertions; and the accumulations were not the result of any agency or management of hers. If she had been *sui juris*, and had invested the money in other property, the question might have been different.

STONE, J.—The assignments of error in this case present the question of the domicile of Sarah M. Copeland, the intestate, at the time of·her death. The appellant contends, that she had her domicile in the State of Tennessee; and her estate being personalty, it follows, if this be so, that the distribution must be according to the laws of that State. The probate court of Limestone ruled, that she was domiciled in Alabama, and ordered distribution in accordance with his construction of the statutes of this State. The most material question in this case hinges on this inquiry.

William Copeland, the father of intestate, died intestate, a resident citizen of said Limestone county, State of Alabama, leaving a widow, and three heirs-at-law, of whom the said Sarah M. was one; she being then an infant under three years old. The other heirs-at-law were by a different mother. At the distribution of said William Copeland's estate, certain slaves were allotted to said Sarah M., which passed into the hands of Mr. Wimberly, who had been, by the probate court of that county, appointed her guardian; and said slaves ever afterwards remained in the hands of her said guardian, until the death of the said Sarah M., and were controlled by him as such guardian, and were kept within said county. When said Sarah M. was four or five years old, her mother, the widow of said Wm. Copeland, intermarried with one Menifee, and soon afterwards removed to the State of Tennessee, in company with her said husband, and carried the said Sarah M. with her; but the guardian did not consent to such removal. Said Sarah M. remained in Tennessee, with said Menifee and wife, until she was about eight years old, when she died there—intestate, of course.

The slaves, as we have shown, came to her in the distribution of her father's estate. She left a brother and sister of the half-blood on the father's side, and two sisters of the half-blood on the mother's side.

In the case of Carlisle v. Tuttle, (30 Ala. 613–623,) speaking of the right of the mother to change the domicile of her infant child, we said: "Mrs. Tuttle, being the natural mother of the ward, had the right, after the death of the father, and during her widowhood, to change his domicile; he being at the time under the age of seven years, and there not appearing any fraudulent design to alter the succession upon the infant's death, and there being no guardianship in this State."

The principle asserted in the foregoing extract, it will be seen, does not necessarily control this case, because it appears from the present record that, before the removal of the said Sarah M. Copeland, her mother had intermarried with a second husband, and a guardian had also been appointed for the infant in this State. It also appears that the Tennessee statute of descents is more favorable to Mrs. Menifee's line of relationship than the Alabama statute is.

A discussion of this subject by Chief-Justice Gibson seems to us to be eminently sound.—See School Directors v. James, 2 Watts & Serg. 568. That eminent jurist said: "The domicile of an infant is the domicile of his father, during the father's lifetime, or of his mother during her widowhood, but not after her subsequent marriage; the domicile of her widowhood continuing, in that event, to be the domicile of her child. A husband cannot properly be said to stand in the relation of a parent to his wife's children by a previous marriage, when they have means of support independent of the mother, in whose place he stands for the performance of her personal duties, because a mother is not bound to support her infant children, so long as they are of ability to support themselves. Neither can they derive the domicile of a subsequent husband from her, because her new domicile is itself a derivative one, and a consequence of the merger of her civil existence. Her domicile is his, because she has become a part of

him; but the same thing cannot be said of her children. Having no personal existence for civil purposes, she can impart no right or capacity which depends on a state of civil existence; and the domicile of her children continues, after a second marriage, to be what it was before it."

Of similar import are the following authorities: Reeve's Domestic Relations, 298; Potinger v. Wightman, 3 Merivale, 67.

Without indulging in any inquiry into the *bona fides* of Mr. and Mrs. Menifee, in removing the intestate to another State having other and different rules of descent more favorable to appellants, we adopt the principles declared in the case of School Directors v. James, (*supra,*) and hold, that the domicile of intestate was not changed by her removal to the State of Tennessee, under the circumstances disclosed in this record. It results from this, that her property must be distributed according to the Alabama statute of descents.—See Cook v. Wimberly, 24 Ala. 487.

[3.] The slaves which constitute the bulk of Miss Copeland's estate, came to her by descent from her father. These the probate court rightly distributed to her brother and sister of the blood of her father.—Code, §§ 1576, 1581; Stallworth v. Stallworth, 29 Ala. 76. The money, which was the product of the hires of intestate's slaves, after they had been distributed to her, were not an "inheritance," and did not come to her by " descent, devise, or gift." As to this sum, section 1576 of the Code requires, that it shall be equally distributed between her brother and three sisters, the children of her father and the children of her mother. On this single question the probate court erred.

Reversed and remanded.