# Pinkston *v.* Semple.

### *Statutory Action in nature of Ejectment.*

1. *Inebriates' estates; father as "next of kin."*—Under statutory provisions for the preservation of the estates of inebriate persons (Code,. §§ 3502–06), the father, as "next of kin" of his son, may file a petition for the appointment of a trustee of his estate, although the inebriate may have brothers or sisters.

2. *Same; effect of decree on control of inebriate's estate.*—A decree rendered under such petition, appointing a trustee of the inebriate's estate, takes away from him all right to control or dispose of any property included in the petition, and renders void any subsequent conveyance by him of any of that property, although the purchaser had no notice of the statutory proceeding; and the fact that the sale was made with the knowledge and assent of the trustee, who also received the purchase-money, or directed its payment, does not impart any validity to the conveyance.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This was a statutory action of ejectment, brought by the appellee, H. C. Semple, as administrator of the estate of William Thomas Williams, against the appellant, J. R. Pinkston; and sought to recover from the defendant a tract of land, of which the intestate of plaintiff had been possessed, and which he had professed to sell and convey to the defendant in this action.

Prior to the pretended sale of the land in controversy to the defendant by said Wm. Thos. Williams, deceased, a bill had been filed by his father, under section 2502 of the Code, alleging that by reason of his intemperance he was unable and unfit to manage or control his estate, and asking that a trustee be appointed, and describing the property which he then held,. among which was the tract involved in this suit. Upon this bill, his father was appointed trustee, and as such took charge of his property. After this proceeding, and after the trustee

[Pinkston v. Semple.]

had taken possession of the property of said Wm. Thos. Williams, he, said Wm. Thos. Williams, sold, and made to the defendant in this suit, J. R. Pinkston, a deed to the tract of land here involved, and it is under this deed that he now bases his right to defend and defeat this action brought by the administrator.

On the trial of the case, the court overruled the defendant's objections to the introduction in evidence of the chancery proceedings, and the defendant duly excepted. The defendant also duly excepted to several rulings of the lower court in sustaining the plaintiff's objection to evidence sought to be introduced by the defendant, showing the execution of the deed by the said Wm. Thos. Williams, the payment of the purchase-money, the receipt of a portion of it by the trustee, the trustee's assent to the sale of said land; and that it was done at a time when the said Wm. Thos. Williams was sane and sober.

At the request of the plaintiff, the court gave the general affirmative charge in his favor, to which the defendant excepted. There was judgment for plaintiff; and defendant, on this appeal, assigns the various rulings of the lower court as error.

WATTS & SON, and ARRINGTON & GRAHAM, for appellant. A father is not of "next of kin," as used in the statute; and, therefore could not file the bill involved in the present suit. The term, "next of kin," having a well defined meaning at common law, it must be supposed that the legislature used the said term in that sense.—*Hillhouse v. Chester*, 3 Amer. Dec. 265; *Butts v. Voorhees*, 22 Amer. Dec. 489; *Elmsly v. Young*, 2 M & K. 780; *Witty v. Mangles*, 4 Beav. 358; 10 Cl. & Fin. 215; Perry on Trusts, § 257. The court should have permitted the evidence sought to be introduced.—*Kinsbury v. Yniestra*, 59 Ala. 320; *Thompson v. Whitman*, 18 Wall. 457. An act of conveyance done in a lucid or sober interval is binding on a grantor.—*Hutchason v. Sandt*, 4 Rawle, 233; *Hart v. Deamer*, 6 Wend. 497; *Hicks v. Marshall*, 8 Hun, 327; 14 Pa. St. 417. The legal title of the land in controversy never passed out of W. T. Williams by virtue of the chancery decree.—*Ex parte Williams*, 87 Ala. 547.

SEMPLE & GUNTER, *contra.*—A father is of "next of kin," as contemplated by the statute.—Code of 1886, § 1918; 35 Ala. 695; 2 Kent's Com. 413; 2 Blackst. Com. 504; *Murdock v. Ward*, 67 N. Y. 389; *Keteltas v. Keteltas*, 72 N. Y. 315; *Luce v. Dunham*, 69 N. Y. 36; *Betsinger v. Chapman*, 88 N. Y. 494. This is especially true when the purpose for which

the statute was enacted is taken into consideration, which it is right should be done.—88 N. Y. 494; Enlich on Int. of Stat. §§ 73, 76, 78. Chancery had jurisdiction when it rendered the decree putting said property under the control of a trustee.—Code, § 2502; *Hunt v. Hunt*, 72 N. Y. 217. That decree is, therefore, *prima facie* correct, and can not be attacked collaterally.—12 Amer. & Eng. Encyc. of Law, pp. 147, 299, 300, 301; *Turrentine v. Daly*, 82 Ala. 207.

McCLELLAN, J.—In the view we take of this case, there is but one question in it, namely, whether the Chancery Court acquired jurisdiction to appoint a trustee for the protection of the estate of William Thomas Williams, an intemperate person, by a bill filed to that end under Chapter 5, sections 2502–2506 of the Code, by the father of the inebriate, which did not negative his having a brother or sister or other next of kin, or allege that the complainant was next of kin of said Williams. The statute provides: "When any unmarried man, over twenty-one years of age, is, by reason of intemperance, unfit to manage his estate, or is wasting or squandering it, and thereby in danger of being reduced to poverty and want, his brothers or sisters, or next of kin, or any or either of them, may themselves, or by next friend, if minors or married women, file their bill in chancery to preserve the estate of such intemperate person from further waste, and for general relief." Other provisions are for making the inebriate a party defendant, for the hearing, a decree thereon, if the averments are established by confession or admissions of the answer, or by proof, depriving him of all control of the estate described, and appointing a trustee thereof, prescribing his duties, &c.; and for the restoration of the estate on petition and proof of reformation and fitness of the person whose estate has been committed to a trustee to have charge of the same. The manifest purpose of this legislation is the protection and preservation of the inebriate's estate for *his* support and maintenance, and to avert the danger of his being "reduced to poverty and want." It not only does not involve, but negatives, the idea of conserving any interest his heirs expectant or distributees may be supposed to have in his estate. And this appears, not alone from the purposes which are expressed in the act, but also from the fact that the trustee to be appointed need not be the complainant in the bill, nor a brother or sister, or next of kin, of the intemperate person, but is to be selected by the Chancellor, whose discretion in that regard is in no degree controlled by considerations of relationship of the trustee to the inebriate or to the proceeding. Indeed it may well be

conceived that there might be cases in which such relationship, involving an expectancy of succeeding to the estate, and an interest in preserving it to that end, would be inimicable to suitable support of the *cestui que trust*, and which would supply good reason for committing the property to a stranger. The limitation in the statute of the right to institute and prosecute the proceeding could not, therefore, have had any basis in the minds of the law-makers, upon considerations of the pecuniary or property interests *in futuro* of the classes of persons who are allowed to file the bill; it was not rested upon considerations which underlie statutes of distribution and descent, whereby the brother has priority of the father, though one degree further removed in kinship, and descendants take in preference to the brother, though one or many degrees further removed in blood. The interest, in view of which the right of action is confined to brothers and sisters and next of kin, is a personal one, and assumed personal solicitude for the well being of the inebriate, growing out of and incident to the relationship of blood, wholly apart from any consideration of a possible property right that may or may not be also incident to the relationship as the party moving in the matter may or may not be the next of kin of the inebriate. Another consideration, doubtless conducing to the limitation of the right of action found in this statute, was the assumption that persons belonging to the designated classes would be advised of the situation and of the necessity for intervening for the protection of the inebriate's estate. It may therefore be safely affirmed that the two considerations moving the legislature to the limitation referred to were the personal solicitude for the welfare of the inebriate and the knowledge of his condition and estate on the part of those allowed to file the bill, inducing them to act advisedly, intelligently and disinterestedly in the premises. There can be no question but that these qualifications might exist in a higher degree in the father than in the brother or sister. . Nay more, instances may easily be conceived, indeed we apprehend their occurrence is comparatively not infrequent, where the brother or sister is an infant in arms, or beyond the realm and entirely unadvised of the situation, or callous in respect to it, or mentally incapacitated, or the brother himself is an inebriate, requiring, it may be, a committee for his own estate, in which the father alone, and in his own right, would or could institute the proceeding, and, in which, unless the father is allowed to exhibit the bill, the beneficent purposes and policy of the law would be entirely thwarted and defeated. Such a result should not be tolerated, if a different one may be worked out

without violence to the terms of the statute. A construction which would make possible such abortion of the legislative purpose should not be adopted, unless enforced by the language of the act. In our opinion, the language employed, so far from necessitating that conclusion, is entirely consonant with the father's right to intercede. The "brothers or sisters or next of kin, or any or either of them," may file the bill. If the father may be said to be "next of kin," to an inebriate who has brother or sister living, very clearly he belongs to one of the three classes, any of which, or any number of either of which, may become the actor in this proceeding. The term "next of kin" literally, and at the civil law, means nearest in blood relationship, the degrees of kinship being reckoned both upwards to the ancestor and downwards to the issue, each generation counting for a degree. In statutes of distribution, or reckoning according to what may be termed the priorities of such statutes, "next of kin" implies those entitled to the property of an estate, whether there in fact be any blood relationship or not. Thus, for instance, where the husband or wife, as the case may be, is entitled to distribution along with the brothers and sisters, or descendants of the deceased, he or she is, for this purpose, next of kin in the same degree as those taking through the tie of blood; and the term embraces the one as well as the other class, though in the natural sense and in contemplation of the Roman law the one would not bear any relation of kinship at all.—*McCord v. Smith*, 1 Black, 459; *Ins. Co. v. Hinman*, 34 Bush, 410; *Steed v. Kurtz*, 28 Ohio St. 192.

On the other hand, in wills "next of kin" are reckoned according to generations in blood without any reference to the statutes of descents and distribution obtaining in the particular jurisdiction, and include alike those of the same degree as well in the ascending as in the descending line, but does not embrace the husband or wife of the testator.—2 Jarmon on Wills, pp. 108, 109. It thus appears that the phrase has two distinct meanings, and the one or the other is to be applied in the particular instance accordingly as the question arises under the statute of distribution or some other statute affecting the rights or liabilities of distributees on the one hand, or without any reference to that statute on the other. In the first case, it embraces those only and all those entitled to share in the estate whether related by consanguinity or not; and in the second case, it embraces only those and all those related by consanguinity in the same degree. The statute we are now considering, as we have seen, is neither a statute of distribution nor one affecting the *status* or rights, liabilities

or remedies of distributees. There is no reason why we should not apply to its provision with respect to next of kin the doctrine obtaining in this country and in England in respect of wills, and by which the reckoning of kinship is made according to the rule of the civil law, from son to father and from son through father to brother and so on. Indeed, since both wills and statutes of distribution have reference to the disposition of property, and since it might be supposed that the statutes established a kind of public policy on this subject which ought to be effectuated in the construction of testamentary provisions, there would be much more plausibility in defining the words "next of kin" in a will as they are defined with respect to distributions, than in giving them that meaning in a statute having no reference whatever to final dispositions of property; but it is universally held at this day that their interpretation in wills must be found in the civil law, and not in statutes of descent and distribution.—*Harris v. Newton,* 36 L. T. N. S. 173; *Withey v. Mangles,* 5 Jones Eq. 236; *Redmond v. Burroughs,* 63 N. C. 242; *Houghton v- Kendall,* 7 Allen 72.

The rule of the civil law is indeed the natural and abstractly correct one. That of the common or canon law is purely artificial, devised solely with reference to descents, and intended to effectuate a certain public policy in relation thereto. It was not designed to afford criteria for determining degrees of kinship except with respect to descent and distributions of the estates of decedents. As to all other matters, we feel safe in affirming that of the Roman law to be the only true and determining rule, even if we were without constraint to this conclusion by our own statutes. But in these it is expressly provided that the degree of kindred must be computed according to the rules of the civil law.—Code, § 1918; and except with respect to some priority of right otherwise specially provided for in the descent or distribution of property, a matter not involved here, this statutory adoption of the rules of the civil law must be effectuated.—*Phillips v. Petect,* 35 Ala. 696. But aside from all this, and conceding the phrase "next of kin" to have, in general acceptation, two meanings, it will, when employed in a statute, be accorded that definition which is more in harmony with, and will better promote, the objects which the law makers had in view, and this especially where the meaning thus given to it is its natural import.—Endlich Int. of Statutes, §§ 73 *et seq.* We have no question but that the objects of this statute will be best promoted, as we have endeavored to demonstrate, by giving to the term the interpretation which it every where, outside of statutes of descents and distribution, bears, and which makes the father next of kin to

[Pinkston v. Semple.]

the son. We find nothing in the phraseology of the act militating against this construction or constraining us to the other view. We, therefore, adopted it, and hold that the bill of complaint seeking to have the estate of William Thomas Williams committed to a trustee was properly filed by his father notwithstanding he had brothers and sisters, and that the averment that complainant was the father of the inebriate was sufficient to give the chancery court jurisdiction, without affirming that he was next of kin, or negativing the fact that the inebriate had brothers and sisters.

It is not insisted that the bill was lacking in any other jurisdictional averment, or that there was any irregularity in the proceedings in the cause. The decree rendered therein pursued the statute, deprived the inebriate of further control over his estate, and provided for its safe keeping by the appointment of a trustee. It could not be held without the utter emasculation of the statute that, after the passing of this decree, the inebriate could convey any part of the estate covered by it and committed to the trustee. His deed to that end to the defendant below was absolutely void, and passed no shadow of title into the grantee, upon which a recovery could be had in this action, even though it was executed when the grantor was entirely sober and lucid, and with the assent of the trustee and upon full payment to, or as directed by, the trustee. It stands upon the same footing before the law as deeds of insane persons under guardianship, and is not merely voidable, but void.— *Wait v. Maxwell*, 5 Pick. (Mass.) 217; *Hoovey v. Hobson*, 53 Me. 457; *Rannels v. Gerver*, 80 Mo. 474.

The trial court properly excluded the testimony offered to show that the inebriate was competent to contract when the deed was executed, that the trustee assented to it, or received the purchase money directly or indirectly, and that the defendant had no notice of the decree depriving Williams of his estate and appointing a trustee for its safe keeping. The defendant claiming through and being privy to the inebriate, was bound by the decree whether he had actual notice of it or not. Nor was there error in giving the affirmative charge at the request of the plaintiff.

Affirmed.