## KIMBROUGH v. DICKINSON.
### I Div. 241.

Supreme Court of Alabama.
Jan. 17, 1946.

O. S. Lewis, of Dothan, for petitioner.

J. Hubert Farmer, of Dothan, opposed.

Roy W. Kimbrough, of Thomasville, John A. Dickinson, of Prattville, and Hill, Hill, Whiting & Rives, of Montgomery, for appellants.

Adams & Gillmore and Paul S. Jones, all of Grove Hill, for appellee.

D. M. Powell, of Greenville, amicus curiæ.

FOSTER, Justice.

This is an appeal from a decree overruling a demurrer to a bill in equity filed by the executrix of the will of Shelton C. Dickinson, deceased. Complainant also sued individually and as a legatee under the will. The purpose of the bill is to have construed the will, on account of an ambiguity in the third paragraph of it, as to whether the devise is to a class and was intended for the survivor of it living at the time of the death of testator. The devise is to his "nearest living kin—my beloved brother and sister Robert L. Dickinson and Maude Dickinson. These two to share alike in all property." The will was dated June 20, 1939, and testator died December 21, 1943. Neither testator nor Maude Dickinson had married. Robert died September 5, 1939. Robert had married and had five children; and his wife had been dead since 1921. Robert and his children, Maude and testator made up a family group, and lived in the old home at Grove Hill, owned by testator and Maude. Robert's children were members of the group, though three of them had married and moved off. Testator was successful in business at Thomasville, sixteen miles away; but he was virtually a member of the household. Robert had been in ill health and eventually had both feet amputated. Practically all the medical and hospital expenses were borne by testator. His relations with the other next of kin were not unpleasant, but not intimate, and such as obtains with friendly acquaintances of no kin, and a few of them he did not know. There were about forty in all. They were descendants of brothers and sisters, mostly of the half blood. Testator himself drafted the will without the aid of counsel.

When a trustee or executor seeks a construction of the trust instrument or will, equity will take jurisdiction if such instrument is ambiguous and uncertain in its meaning, or difficult and embarrassing in its interpretation. Gilmer v. Gilmer, 245 Ala. 450, 17 So.2d 529; Wilson v. Rand, 215 Ala. 159, 110 So. 3; Carroll v. Richardson, 87 Ala. 605, 6 So. 342; Sellers v. Sellers, 35 Ala. 235; Hoglan v. Moore, 219 Ala. 497, 122 So. 824; First National Bank v. Sheehan, 220 Ala. 524, 126 So. 409.

But this does not mean that equity jurisdiction is withheld when the ambiguity is latent and not apparent on the face of the instrument. 69 Corpus Juris 145, 146 note 32, 153 note 91; Patch v. White, 117 U.S. 210, 6 S.Ct. 617, 29 L.Ed. 860; Achelis v. Musgrove, 212 Ala. 47, 101 So. 670. As "a latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence." Patch v. White, supra [117 U.S. 210, 6 S.Ct. 619.] But it cannot be said to be an ambiguity if its language is not susceptible of more than one construction. Parol evidence "is never admissible to show terms the testator intended to use," but did not use. Achelis v. Musgrove, supra [212 Ala. 47, 101 So. 672]; Snellings v. Downer, 193 Ga. 340, 18 S.E.2d 531, 139 A.L.R. 860.

The rule applies to other written instruments, to the effect that latent ambiguities may be made certain by proof of concurrent collateral material facts and circumstances if sufficient to that end. Hereford v. Hereford, 131 Ala. 573, 578, 577, 32 So. 620; Webb v. Elyton Land Co., 105 Ala. 471, 18 So. 178; DeJarnette v. McDaniel, 93 Ala. 215, 9 So. 570; Chambers v. Ringstaff, 69 Ala. 140.

And if in the light of these circumstances it is certain in its meaning and application, the court cannot go further or declare that the grantor or testator meant something different from what he expressed. City Bank & Trust Co. v. McCaa, 213 Ala. 579, 105 So. 669; Baker v. Hendricks, 240 Ala. 630, 200 So. 615; Spencer v. Title G. & T. Co., 222 Ala. 485, 132 So. 730.

We must place ourselves in the position of the testator and consider his situation· at the time he executed the will to arrive at his intent from the "four corners of the instrument," and determine whether it is ambiguous, Meglemry v. Meglemry, 222 Ala. 229, 231, 131 So. 906; Achelis v. Musgrove, supra,—although the language of the will is controlling when it has a clear meaning (Betts v. Renfro, 226 Ala. 635, 148 So. 406), and all rules of construction must give way to that meaning. O'Connell v. O'Connell, 196 Ala. 224, 72 So. 81.

The question before us, and the only question, is whether the language of the will is reasonably susceptible of two constructions in the light of the circumstances alleged in the bill to exist. We will undertake to show that the will is not on its face ambiguous, and that it is not rendered so by the circumstances alleged in the bill. When the will was prepared by one not versed in legal terminology, the terms used should be treated as they are applied in common parlance.

The words "my nearest living kin," are used, and the intent of the testator in so doing gives rise to the controversy here. He did not use "next of living kin." Next of kin has been said by this Court in the matter of descent and distribution to mean those entitled to inherit under the law, whether or not there is a blood relation; whereas, in wills it means those who according to blood and without reference to statutes are closest in degree of relationship, reckoned on the· ascending and descending process of the civil law. Pinkston v. Semple, 92 Ala. 564, 9 So. 329; section 4, Title 16, Code of 1940.

Technically it is said that courts almost universally decline to draw a shade of difference between "next of kin" and "nearest kindred," Godfrey v. Epple, 100 Ohio St. 447, 126 N.E. 886, 11 A.L.R. 317; Swasey v. Jaques, 144 Mass. 135, 138, 10 N.E. 758, 762, 59 Am.Rep. 65—and each means, in construing a will "the nearest degree of consanguinity." Blagge v. Balch, 162 U.S. 439, 16 S.Ct. 853, 40 L.Ed. 1039, 11 L.R.A. 315, 317. And such was the established English interpretation. 2 Jarm. Wills, 5th Ed., 108, 109.

Section 5, Title 16, Code, places relationship of the half blood as equal to that of the whole blood, except as to certain ancestral property.

Brothers and sisters of the half blood are in the same degree as those of the whole blood, except as to ancestral property received from an ancestor, not common to them all. Johnson v. Copeland's Adm'r, 35 Ala. 521; Stallworth v. Stallworth, 29 Ala. 76. And the children of a deceased brother of the half blood take the share of their parent, and are in the same degree by representation under the law of descent and distribution, Stallworth v. Stallworth, supra; sections 2 and 3, Title 16, Code,—but not under the ascending and descending rule of the civil law applicable in Alabama. Code, section 4, Title 16; Purcell v. Sewell, 223 Ala. 73, 134 So. 476; Coleman v. Foster, 112 Ala. 506, 20 So. 509.

The authority by which the children of a deceased brother or sister (whether the whole or half blood) are in the same degree of relationship as their parent would be if living, is by virtue of the principle of representation under sections 2 and 3, Title 16, Code. But that situation is statutory, and not according to the civil law, to determine the degree of relationship on the ascending and descending theory. According to that theory, the children of a deceased brother would not be in the same degree of relationship as their parent. Coleman v. Foster, supra. There would be one degree of difference. Whereas they are in the same degree by right of representation under the statutory law of descent and distribution. Pinkston v. Semple, supra; Stallworth v. Stallworth, supra.

In this case the bill alleges that the testator himself wrote the will without the aid of counsel, so that in using the words "nearest living kin," he was not speaking with any technical knowledge, but such as a man of ordinary intelligence would understand the meaning of those words. It seems to us that one of ordinary intelligence using those words would understand them as said to be applicable to wills in Pinkston v. Semple, supra, not now considering the matter of the half blood. That is to say, that one would not ordinarily understand that children of a deceased brother or sister are as closely related to testator as his living brother or sister. And while the statute also places a brother and sister of the half blood in the same degree of relationship as those of the whole blood, except as to property which was inherited from the parent who was not common to all; that is by statute, and it is not to be

329

supposed that its meaning is fully understood by one not versed in the law.

■ The bill shows that the testator had had ten brothers and sisters of the half blood, all were dead when the will was executed, some or all leaving children, and there had been five of the whole blood, including himself who was the youngest, two of whom were then dead leaving children; that he did not inherit the property; that he had only one brother and one sister of the whole blood living at that time. They were named as his "nearest living kin." That brother died before testator, leaving children. If the legacy was to him personally, not merely to a class of which he. was a member, the legacy lapsed and was subject to distribution among the next of kin of the testator, because the legatee was not a descendant of testator. Section 16, Title 61, Code; Morgan County Bank v. Nelson, 244 Ala. 374, 13 So.2d 765; Hamlet v. Johnson, 26 Ala. 557.

■ When the testator said in his will "my nearest living kin—my beloved brother and sister Robert L. Dickinson and Maude Dickinson. Those two to share alike in all property," he evidently thought that those two were his nearest kin by consanguinity then living. In that assumption he was correct according to our law applicable to the interpretation of wills. He was naming those two as the sole members of that class. Did he intend to benefit them as a class, or as individuals? He may or may not have known that if one of them died before he did, the legacy to that one individually would lapse under the statute and go to his own next of kin generally. When he used the word "living" did he mean living at the time he drafted the will or at the time of his death? He may or not have been familiar with the principle, technical in operation, that a will is effective and speaks as of the date of the death of the testator, although it is construed in the light of the facts existing when it was drawn, and which were known to the testator. 69 Corpus Juris 248, 263; Henry v. Griffith, 242 Ala. 598, 7 So.2d 560.

■ But the question is whether the gift was meant for the survivors of a class, so as to make Maude the sole legatee, as being at the time of his death his nearest living kin. It is well settled that when the number of beneficiaries is certain, or the *share each is to receive* is certain, and in no way dependent for its amount on the number who shall survive, it is not ordinarily a gift to a class or the survivors living at his death, but to individuals. This is true unless there is something in the will to manifest a different intent. Henry v. Griffith, 242 Ala. 598, 7 So.2d 560; Byrd v. Wallis, 182 Miss. 499, 181 So. 727; 69 Corpus Juris 231, 232, 261; 75 A.L.R. 780–783; Walker v. First Trust & Savings Bank, 8 Cir., 12 F.2d 896, 75 A.L.R. 757; In re Murphy's Estate, 157 Cal. 63, 106 P. 230, 137 Am.St.Rep. 110; Peck v. Peck, 76 Wash. 548, 137 P. 137; Boynton v. Boynton, 266 Mass. 454, 165 N.E. 489.

■ It is fully recognized that rules of construction are only an aid to interpretation when a clear intention is not manifested in the will. The frame of the will in that connection has been quite varied in the cases considering the question. There is something in each of them which shows that a class was intended when it was so held. In each instance it is necessary to interpret the language of the particular will. Snellings v. Downer, 193 Ga. 340, 18 S.E.2d 531, 139 A.L.R. 860; Stedman v. Priest, 103 Mass. 293; Cotter v. Cotter, 293 Mass. 500, 200 N.E. 411, 413; Jackson v. Roberts, 14 Gray, Mass., 546; Bolles v. Smith, 39 Conn. 217; Swallow v. Swallow, 166 Mass. 241, 44 N.E. 132; Fowler v. Whelan, 83 N.H. 453, 144 A. 63, 75 A.L.R. 752. We do not think any good purpose could be had by an analysis of each of them.

■ This will names the beneficiaries, so that the number of them is certain and the share of each is expressly stated to be the same as that of the other. It appears to us that he was merely undertaking to give a description of this brother and this sister who were then living, and to give a reason for preferring them over his other relatives who were not in the same degree of relationship under the law (In re Hittell's Estate, 141 Cal. 432, 75 P. 53, 69 Corpus Juris 237, 238 [2, 4 and 5]), and who were not as close to him by consanguinity as the two named. If he had intended that upon the death of Robert, before his own death, his share would go to Robert's children, or to Maude, he could easily have said so, or used words so indicating, or after the death of Robert have made a codicil giving direction different from what the law provides. His failure to do so is significant. We do not know whether he knew that upon the death

of Robert before his own death, Robert's share would be distributed amongst all the relatives of the testator under the law of descent and distribution (we must presume that he did), but if he did not know it, and if that was not in accordance with his wish, we have no way of knowing what would have been his wishes, not expressed, but we cannot change the effect of his will so as to make it speak something different from that expressed or write a will for him. While his intention is to be carried out, and that intention is to be derived from the language which he uses in the will when fully understood, it cannot be changed by the court. It cannot be reformed. If it has a judicial meaning, it must be given effect. We cannot say that under all the circumstances, if he had known what would have been the effect of the death of Robert before his death, he would have done something else with Robert's share, or what he would have done with it, and therefore it must stand as written. Morgan County Bank v. Nelson, supra.

The surrounding circumstances show, we think, a preference for his brother and sister named, but do not show what his preference would be upon the death of one of them. He was interested, they show, in the family circle of this brother and sister, where he made his home. The brother had children, his wife was long since dead. He was a cripple and testator had assisted in caring for his family. All show an intention not to cut off him or his children. But it does not show an intention to prefer Maude to the extent that she would get it all if Robert did not survive him. Although he may not have intended to cut off the children, as to which we do not know, what he did is to have that effect, except as among those who are his next of kin under the law of descent and distribution.

We must either hold that the entire legacy goes to Maude on account of her survival in a class, or the part devised to Robert lapsed and descended to testator's next of kin under the law of descent and distribution. We cannot say that under any sort of construction it went to Robert's children. We think the great weight of appellee's argument is that testator wanted to care for the family consisting of the brother and sister, but that argument included also his interest in Robert's children who had been under his care and maintenance. Would that idea have caused him to place them wholly under the charity of Maude. There is nothing to so indicate. The circumstances justify the inference, if he was not familiar with the law as to a lapsed legacy, that Robert's children were as much subject to his solicitude as was Robert himself, and that he may have wanted them to take the share devised to their father. But we cannot make such an addition to his will, assuming that was his desire. But there is nothing to indicate that Maude was to have it all to their exclusion, even as a next of kin taking as by descent and distribution, if she survived the testator and Robert did not.

It results from the foregoing discussion that our opinion is that the demurrer ought to have been sustained, since the bill does not show such an ambiguity as needs interpretation, though considered in the light of the facts known to the testator at the time he drafted the will. A decree will be here rendered reversing that of the trial court, and remanding the cause for further consideration.

Reversed and remanded.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.