# School Directors *against* James.

Minor children resided with their mother in E. Bradford township, Chester county, where their father died, the mother being married to a second husband, living with her in E. Bradford township; *held* that, notwithstanding they had a guardian living in the borough of West Chester, their personal property in the hands of the guardian was not taxable for the benefit of the W. Chester school district.

The domicil of a guardian is not necessarily the domicil of his ward.

ERROR to the Common Pleas of *Chester* county.

This was an amicable action, brought by the plaintiffs in error, the School Directors for the district composed of the borough of West Chester, against Francis James, guardian of the minor children of William Gibbons, deceased, in which the following case was stated for the opinion of the court, to be considered in nature of a special verdict:—

On the first day of February 1836, Francis James, then and until the present time resident in the borough of West Chester aforesaid, was appointed by the Orphans' Court of Chester county, guardian of the persons and estates of the minor children of William Gibbons, late of the township of East Bradford, deceased. The said minor children reside with their mother in the said township of East Bradford, where and with whom they have continued to reside since their birth.

At the last levy and apportionment of the taxes for school purposes, made by the said school directors, there was levied and apportioned on the personal property of the said minors, as in the hands of the said guardian, a tax of $10.60, which sum the said guardian admits to be a correct apportionment of said tax on the amount of personal property belonging to said minors, but which he objects to paying, on the ground that the said property is not justly chargeable with the payment of a common school tax for the benefit of the West Chester common school district. It is agreed that the common school law was not adopted by the inhabitants of East Bradford township for the year 1837.

If the court shall be of opinion that the law of the case is with the plaintiffs, judgment to be entered in their favour for the amount of the tax levied, and costs of suit. If otherwise, for defendant.

The following supplemental agreement was filed:—

It is agreed that the following facts be considered as constituting a part of this case:   .

The personal property belonging to the minors was of the kind

[School Directors v. James.]

made taxable by an Act, entitled an Act assessing a tax on personal property, to be collected with the county rates and levies, for the use of the commonwealth, passed the 25th day of March 1831; and the mother of said minors, previous to the levying of the tax, was married to Marshall B. Hickman, with whom they then resided and still continue to reside.

The charge of the learned Judge below (Bell, President), was in favour of the defendant, for whom judgment was entered accordingly, which was now assigned for error.

The case was re-argued by

*Lewis,* for the plaintiffs in error. The question in this case is an important one, and arises on the construction of the Act of 13th of June 1836 (*Purd.* 315), the fifth section of which provides that the school directors shall levy a tax, &c., on personal property made taxable by the Act of 25th of March 1831; the first section of which Act lays a tax upon " all personal estate and property within this commonwealth, &c., owned or possessed by any person whatever," &c.

1. Is the property of minors taxable? The words " owned or possessed by any person whatever," certainly include minors. This appears from the 5th section of the Act of 1836, which excepts widows' dower from taxation.

2. The guardian is chargeable with this tax. The charge must be a personal one. The only remedy to enforce this tax, is by distress and imprisonment, under the Act of 15th of April 1834. It is not pretended this remedy could be enforced against the minor. The guardian is the responsible person. He has power to sell the property, or recover it by suit, and is to all intents and purposes the owner and possessor.

3. All personal property in the district is made chargeable by the Act of 1836. The property here was money, and stock in bank. What is the *situs* of such property, in point of law? It has no locality—it follows the law of the person. *Story's Conf. Laws* 312. As the defendant resided in West Chester, it was property there, even though it might have been stock in companies out of the state. It is observable that the provisions of the Act are the same as to real and personal estate. The residence of the guardian is the residence of the ward, in the same manner as the residence of the parent or husband is that of the child or wife. *Story's Conf. Laws* 44. Suppose the guardian has two wards, and sends one to West Point and the other into the navy, the residence of both is with the guardian, in legal contemplation. When one of these wards should come of age, he would vote at West Chester. If the tax were to be assessed in East Bradford township, how is it to be collected? The collector is not allowed to go out of the township. The construction contended for on the other side, would exempt from taxation the personal property of

minors held and received by their guardians, if they lived out of the state.

*Smith, contra.* The impossibility of collecting the tax in East Bradford would not give it to West Chester, if not otherwise in the law. In *School Directors* v. *Carlisle Bank*, (8 *Watts* 294), Mr Justice Kennedy intimates that this furnishes no reason for giving jurisdiction to a district not having authority by law. The general principle of taxation is to raise a revenue for those to be benefited by it. 4 *Serg. & Rawle* 355. The minor has no interest in the schools at West Chester. We admit personal property follows the person; but who was the owner, and where was his residence? The Acts of Assembly look to the residence of children. To obtain the appointment of a guardian, application is to be made where the minor resides. The minor's residence is, where his person is, with his mother, and where his father died. The idea of his residence being that of his guardian, is a mere fiction, and cannot constitute a basis for taxation. The Act of 28th of February 1835, sec. 54, relating to county rates and levies, provides that no infant female or lunatic shall be imprisoned for payment of taxes. This would be useless, if the infant's property were not liable. If there were two guardians, living in separate townships, the tax could not be assessed.

*Lewis,* in reply, insisted that the person having the control over the children, is the one by whom the domicil is to be ascertained. That is the universal rule, applicable to guardians as well as husband and wife. If the wife had changed her domicil, the place where the father died would be the children's; but as soon as a guardian is appointed, his domicil is theirs. If there be two guardians, in several townships, each must be charged with what he has in his hands.

The opinion of the Court was delivered by

GIBSON, C. J. — As this case has no precedent, we must decide it on grounds of reason and analogy; and in order to do so, it is necessary to premise certain principles about which there is no dispute. The domicil of an infant is the domicil of his father, during the father's lifetime, or of his mother during her widowhood, but not after her subsequent marriage; the domicil of her widowhood continuing in that event to be the domicil of her child. A husband cannot properly be said to stand in the relation of a parent to his wife's children by a previous marriage, where they have means of support which are independent of the mother, in whose place he stands for the performance of her personal duties, because a mother is not bound to support her impotent children so long as they are of ability to support themselves. Neither can they derive the domicil of a subsequent husband from her, because her new domicil is itself a derivative one, and a consequence of

[School Directors v. James.]

the merger of her civil existence. Her domicil is his, because she has become a part of him; but the same thing cannot be said of her children. Having no personal existence for civil purposes, she can impart no right or capacity which depends on a state of civil existence; and the domicil of her children continues, after a second marriage, to be what it was before it. Thus, we see that when the defendant was appointed guardian of these minor children, their domicil was in the township of East Bradford, where they resided with their mother, if that were important, even after her second marriage; and as the *situs* of their moveable property attended the domicil of their persons, it was taxable only there. So far there is no dispute. But as a father, or a mother, *sui juris,* may change the domicil of the child by changing the domicil of the family, provided the change be induced for a disinterested motive—not, for instance, to change the rule of succession in the event of the child's death—the question is whether a guardian or tutor stands in the place of a parent, or has the same power; and it is still a vexed one with the civilians, who are equally divided in regard to it. Those who maintain the affirmative of it, are corroborated by the code Civile, which, though of positive enactment, is supposed to be founded, in this particular, on the established principles of civil jurisprudence; while those who maintain the negative have, on their side, among others, the authoritative name of Pothier. But the former are supported by the approbation of Mr Burge, the learned British commentator on the Conflict of Laws, as well as by the opinion of Sir William Grant, in *Pottinger* v. *Wightman,* (3 *Merivale* 67), and by the decisions of some of the American courts; which would be amply sufficient to turn the scale of authority, were it not for the powerful doubt thrown in on the other side by Mr Justice Story. " Notwithstanding," says he, " this weight of authority, which, however, with one exception, is applied solely to the case of *parents,* or of a surviving parent, there is much reason to question the principle on which the decision (in *Pottinger* v. *Wightman*) is founded, when it is obviously connected with a change of succession to the property of the child. In the case of a change of domicil by the guardian, *not being a parent,* it is extremely difficult to find any reasonable principle on which it can be maintained that he can, by any change of domicil, change the right of succession to the minors' property." *Conflict of Laws,* 2*d ed.* § 506, *in notes.* And there are reasons for this doubt which seem to bear it out. No infant, who has a parent *sui juris,* can in the nature of things, have a separate domicil. This springs from the status of marriage, which give rise to the institution of families, the foundation of all the domestic happiness and virtue which is to be found in the world. The nurture and education of the offspring make it indispensable that they be brought up in the bosom, and as a part of their parents' family; without which,

the father could not perform the duties he owes them, or receive from them the service that belongs to him. In every community, therefore, they are an integrant part of the domestic economy; and the family continues, for a time, to have a local habitation and a name, after its surviving parent's death. The parents' domicil, therefore, is consequently and unavoidably the domicil of the child. But a ward is not naturally or necessarily a part of his guardian's family; and though the guardian may appoint the place of the ward's residence, it may be, and usually is, a place distinct from his own. When an infant has no parent, the law remits him to his domicil of origin, or to the last domicil of his surviving parent; and why should this natural and wholesome relation be disturbed by the coming in of a guardian, when a change of the infant's domicil is not necessary to the accomplishment of any one purpose of the guardianship? The appointment of a new residence may be necessary for purposes of education or health; but such a residence being essentially temporary, was held, in *Cutts* v. *Haskins*, (9 *Mass. R.* 543), insufficient to constitute a domicil. But, granting for the moment that a guardian may, for some purposes, change his ward's domicil, yet if he may not exercise the power purposely to disappoint those who would take the property by a particular rule of succession, (and nearly all agree that even a parent cannot,) how can he be allowed to exercise it so as obviously and unavoidably to injure the ward himself? It is true, that what has been said on the subject has had regard to a change of national domicil, and that here we have to do with a supposed change, by implication of law, from one township to another in the same county; but the power of the guardian to do injury can be no greater in the one case than it is in the other. The very end and purpose of his office is protection; and I take it, that there is no imaginable case in which the law makes it an instrument of injury by implication. Where, indeed, he acts fairly and within the scope of his authority, the ward must bear the consequences, because he must bear those risks that are incident to the management of his affairs; but that is a different thing from burthening him with a loss as a mere technical consequence of the relation. But a guardian cannot convert his ward's money into land, or his land into money, except at his own risk; and, for a reason more imperative than any to be found in a case of mere conversion, he must not be allowed to burthen his ward with a certainty of loss by subjecting his property to taxation for purposes in which the ward has not an interest. It is said that these minors may receive an equivalent for their contributions to the school fund by participating in the instruction which it was intended to dispense; but the district in which their parents resided, has elected to reject both the benefits and the burthens of it; and to say they are bound by the election made by the inhabitants of their guardian's district, is to assume the

[School Directors v. James.]

ground in dispute—that their domicil has been changed. A guardian has indeed power over his ward's person and residence; but it follows not that the ward's domicil must attend that of his guardian, for there is nothing in a state of pupilage which requires it to do so. We are of opinion, then, that the domicil of a ward is not necessarily the domicil of his guardian; and that the personal property of these children was not taxable by the borough of West Chester.

Judgment affirmed.