Haynes, J. (Orally.)
This case comes into this court by way of appeal, and has-been heard upon evidence. The petition is brought for the-purpose of restraining the County Auditor from placing upon, the tax duplicate of the county of Erie, certain personal property, amounting to several hundred thousand dollars, belonging to the estate of Hawk, deceased; which, it is claimed,., should be placed upon the duplicate by reason of the fact, that J. O. Moss, one of the executors, is domiciled in the-state of Ohio. This case has been ably argued by counsel... I believe we have examined all the cases that have been sub- ■ mitted to us by counsel; I shall be under the necessity of being very brief in stating the conclhsions at which we have-arrived.
Before going to the main question, however, I will dispose-of a question that is in the petition, by which it is claimed! that the injunction can not be maintained at this time, or at-this stage of the case. ■ „
The petition is filed, we suppose, under sec. 5848 of the-statutes. It pi’o vides for the restraining of the assessment, andl enjoining the illegal levy of taxes and assessments as well as-the collection of the same. It was said in argument that this-property had not yet been placed upon the duplicate — thafrhardly had affairs arrived at that condition where it was-threatened to be placed upon the duplicate. But we think; that the notice served upon-Mr. Moss clearly shows that the-intention of the auditor was forthwith to place the property upon the duplicate, unless Mr. Moss should immediately make a return of the amounts which the auditor indicated to-him, which he refused to do.
The same question arose in a case from Toledo, found im the, 35th,Ohi.o,.State,- page-474,- the-case of ■ Jones, Auditor v. Davis. That was one of the series of cases that were' at one time, pending in the Court of Common Pleas of Lucas County,, and arose from an attempt on the part of a certain board of " equalization of that city to put a large amount of property uponi *454 the tax duplicate'. Among other things, they attempted to put "thereon certain stocks, held by Mr. Davis in the elevator companies in that city. The cases were closely contested, and every point that counsel could think of, was raised in opposition to the injunctions; and among other things, it was objected that the injunctions could not be allowed, especially at that ■ stage of the proceedings. The court say in reference to that: "“The objection that a court-of equity will not enjoin the levying of a tax on property illegally added to the return of the tax-payer is not well founded. The statute, (75 O. L. 778), which is sec. 5848 in the Revised Statutes, provides that the courts of common pleas and superior courts shall have le~ .gal authority to enjoin the illegal levy of tax assessments, or the collection of either. The addition of an item of property to the return of the tax-payer by the board of equalization, with a direction to the auditor to carry the same upon the duplicate, and to assess against it the fixed rate for state, county, and other purposes, does not of itself constitute the levy. Nor does the mere ascertainment of the rate of assessment by those whose duty-it is to determine the rate to be levied. The process is not complete until the valuation of the property, with the sum to be charged against it, is carried upon the duplicate. The injunction in the present cases preceded the action of the auditor, and was therefore properly allowed, and thejudgment of the court below was affirmed.”
The recognition of the section 5848 has been had by the -Supreme Court during the past year, in the case of Whitbeck, Treasurer, v. Minch, which will appear in the 47th Ohio State, page 210. It may be found also in the Weekly Law Bulletin for 1891, vol. 25, p. 136. It is a very short ■decision, and I read it. The court say :
“The party who pays an illegal assessment upon his property, cannot recover it back in a suit against the treasurer, unless the payment was an involuntary one. To constitute the payment an involuntary one, it must appear that the ■treasurer was about to levy a'distress upon the property of the *455 party charged with the assessment. A simple protest against the validity of an assessment, with notice to the treasurer that the party intends to proceed to recover it back, is not sufficient. In such cases the general rule applies, that if litigation is intended it must precede payment, where, as in such case,, the party .has a plain remedy provided by statute, sec. 5848 of the Nevised Statutes, and may resort to the same, and thereby avoid a distress upon his property.”
In that case, oí course, the tax had been assessed, was upon the duplicate, but it recognized a little more fully than the-court seemed to have done before the right of the party to-proceed by injunction. We think, therefore, that the objection that the party had not the right to proceed for an injunction at the present stage of the case, is not well taken.
That brings us to the main question in the case. The facts in the ease are not disputed materially. It appears very clearly that the testator in the case, was, at the time of his death, and for many years prior to that time had been, a resident of the city and state of New York, and had his residence there up to the date of his death. His property was there,, was held there. He appointed as executors of his last will and testament, four persons, three of whom were residents of the state of New York, one of whom resided a portion of the-time in the state of New York, but had his domicile in the state of Ohio — that is to say, he lived in the state of New York more than he did in Ohio ; but still he voted in Ohio,, and called Ohio his residence, and he resided in the county of' Erie so far as he resided in the state of Ohio, and in the city of Sandusky.
One of the executors never qualified. Another qualified,, and owing to sickness resigned. Two were left to administer-the estate. They retained the property in the city of New York, held all the evidences of indebtedness, bonds, stocks,, and mortgages there. They had an office in the city of New York. They had clerks and book-keepers to manage their' business. The notes, bonds and mortgages were, for the pur *456 ¿pose of safe-keeping, deposited with a safe-deposit company in that city, and each of the executors had a key to the box In the Safe Deposit Company. Otherwise we may presume they were kept at the office; practically, they were kept in a • safe provided by the estate. No part of the bonds and mortgages were ever invested in Ohio. None of the evidences ofany - stock were ever brought to the state of Ohio — always remained in the place of safe-keeping, in the state of New York. If ■ there was any investment in the state of Ohio, it was in a single article of stock, of such a nature that it was not taxable • under the laws of Ohio, even as against a resident of the state -of Ohio.
The administration, of course, was had in the state of New York; the trustees were responsible to the surrogate’s court • of that state, and reported to the court from time to time. ’ They were executors, and perhaps testamentary trustees, and -yet in both of the characters we understand that they reported to the surrogate’s court of that state.
Under this state of facts, it is contended on behalf of the Auditor of Erie county, that a portion, at least one-half he .states, of the bonds, stocks, notes and mortgages, property belonging to the estate of the testator, should be taxed in the county of Erie and state of Ohio.
The contention on behalf of the executors is that the whole property is liable for taxation in the state of New York, taxable there, and taxed there in fact according to the laws of the ..state of New York, and should not be taxed in this state. We i-are of the opinion that the contention of the executors is correct. We have endeavored, in the examination of the cases that have been cited to us, to ascertain as far as possible some : general rule that should be applicable to a case of this kind. We find, as we usually find in cases that are contested, where the courts of different states have been passing upon the questions made, that there is a variety of opinion, and ■ some difference in the language of the courts in stating • the conclusions at which they l?ave arrived, and the rules that *457 in their judgment should govern the facts in the case. But on the whole, after a fair examination of the cases, and of the rules deduced therefrom, we are of the opinion that the property is taxable in the state of New York, and is not taxable, under the facts of this particular case, within the state of Ohio.
We have had cited to us a case in the state of Pennsylvania, 60th Pennsylvania State, page 235, Lewis v. The County of Chester. It seems to us a fair discussion of the law. The case is not very long, and I will read it, as a statement of the law of the ease, that is fair, just and equitable in our judgment.
In that case the testator had lived in the state of New York, died there, made a will there, the will was probated there, and he willed his property in the main to his wife and two children. The widow afterwards married, and some seven years prior to the time that the assessment of the tax in question was made, had removed to Chester county, in the state of Pennsylvania, taking with her the two children, who, I believe, were still minors. She had had control as executrix of the whole property, and also as testamentary trustee. She had filed her accounts with the surrogate, as executrix, and had made a full statement, and practically held the property as testamentary trustee. She had taken a portion of the property and had invested it in mortgages in the state of Pennsylvania, taking the mortgages, of course, in her own name as trustee, or perhaps her name individually. The amount of the mortgages there was $32,500. Certain portions of the property also she had invested in mortgages in the states of Delaware and Maryland; and certain property still remained, as we understand, in the state of New York, invested there. The assessor of West Chester placed the whole $32,500 upon the tax duplicate of that county for taxation. A suit was entered by Mi’S. Lewis against the county of Chester for the purpose of testing the correctness of that assessment for taxation. She *458 admitted that, as to the portion of property which in fact belonged to her, it was properly assessed at that place and offered to pay the ratable portion of the tax upon it, but she denied that the remaining portion of the property — three-fourths of it, I think — should be taxed there, and said it belonged to the estate. And she set up a declaration showing that the investment was of the monies belonging to the estate of said decedent, who was a resident at the time of his death of the state of New York; that she was acting as trustee of said estate, and was obliged to account for the management of the same to the surrogate’s court of said city and eounty; also, that part of the monies so invested was loaned on mortgages of real estate in the states of Delaware and Maiyland, and she protested against being assessed for a tax on any part of said monies.
Judge Agnew delivers the opinion of the court. It is as follows:
“The parties to this case are The County of Chester and Mrs. Sarah Lewis; and the question is upon the power of the county to impose taxes upon trust property in her hands. We must not confound it with the power to tax Charles and Elberta Jones, the eestuis que trust, personally for any property they own. To reach her, it must be shown that she is amenable as trustee for something that our law can reach in her hands. If Charles and Elberta are liable themselves for taxable property — which we do not decide — we cannot add that to her liability. These facts are certain. Dr. Jones, the New York owner of the estate, was domiciled at his death in New Y ork, his property in fact, as well as in law, was situated there, his will was proved there, and letters testamentary granted to Mrs. Lewis, the executrix. As executrix and trustee under the will, she derived all her power from the will and the laws of New York, and none whatever from Pennsylvania. She settled her account in New York, was there decreed to invest the balance and retain it in trust, and distribution yet remains to be decreed upon the further order of the surro *459 gate. It must be, clear, then, as argued by the plaintiff in error and on the authorities cited, that the administration and the control of the distribution of the trust estate belongs wholly to the law and the authorities of New York. There is no doubt, therefore, of New York, if she choses so to provide, to tax the whole estate there, in the hands of the trustees under her laws. As trustee, by virtue of her office of executrix, Mrs. Lewis is unknown to our law; while Pennsylvania has neither the wish or the power to interfere with anything within the exclusive jurisdiction of New York.
“ But does it follow, as was argued by the plaintiff in error, that there is no power in Pennsylvania to tax property found in the possession of Mrs. Lewis here and held under the protection of our laws? We think not. Let us suppose that the personalty of Dr. Jones, instead of money and securities, consisted of horses and cattle, and that Mrs. Lewis had brought them with her when she moved into Pennsylvania and kept them here, would it be seriously contended they could escape taxation here? I think not. But she has done the same thing in effect in regard to a portion of the money of the estate. She brought it here and invested it in mortgages on real estate. How did she accomplish this ? She took a bond and mortgage for the money in her own name. Whether she described herself as executrix or trustee, or not, is immaterial, as the contract is personal and confers on her a personal right to demand payment, which must be enforced by the action in her own name under our laws and tribunals. She cannot compel or claim the benefit of a lien as her security except by the force of our laws and the aid of our courts of justice. As to the monies invested here and the value of these securities, she clearly holds her investment not by the law of New York, but by a personal contract protected solely by our law. It is this contract which characterizes her as a trustee in fact by her own act, and draws to it the protection of our law ; and to this extent she is liable to taxation as the price she must pay for tbe priviledge. If, as the act of 1846 does, our law taxes *460 this investment in her hands, she cannot take refuge under ownership of Charles and and Elberta Jones, the cestuis que trust. She has the estate here and has subjected it to the operation of the act of 1846. The same rule must apply to her in Delaware and Maryland, if they likewise tax property taken there.
“What she took there and subjected to their laws, in like manner, is likewise taxable there. She has made herself a trustee in fact to its extent, and looks to those states for protection. They have the same right as Pennsylvania to tax what she has brought there within their borders and invested there.
“ But as to the other property never brought into and not in fact held and invested under our laws, its situs remains in New York. The fact that she is personally here does not make her a trustee here or amenable to our jurisdiction for property not brought here and subjected by her act to the operation of our laws. Not being a trustee under our law, or amenable for the property not accompanying her person,.clearly there is no power to tax her for what she holds in New York as a trustee under the- law of New York, and amenable only to the law of-that state. The act of 1846 does not extend to such a case, but must be confined to the property she has here and has subjected to our law by investing it here.
“ All of the cases cited in support of this view of the learned court below were those where the trustee was appointed or exercised his authority under our law. Westchester v. Darlington, 2 Wright, 157; Bor. Carlisle v. Marshall, 12 Casey, 397; Spangler v. York County, 1 Harris, 322; School Trustees v. James, 2 W. & S. 568.
“ In those cases Pennsylvania stood to the trustees as New York does to Mrs. Lewis in this, and therefore lawfully imposed tax. Mrs. Lewis is liable for the taxes on the sum of $14,800 invested by her in mortgages in this state.
“The judgment of the court below is therefore modified ¿according to these views, and judgment is here entered for *461 the county of Chester, with costs, the sum to be ascertained by the attorney as provided in the stated case.”
I have also here a case in the 119th New York, p. 137, which bears upon the same question. Judge Peckham, in delivering the opinion of the court, says:
“ It is substantially conceded that, and it is very plain, that prior to the act, sec. 1392 of the laws of 1883, the assessment in question could not be sustained. That act provides that all debts and obligations for the payment of money due or owing to persons residing within this state, however secured, or wherever such securities shall be held, shall be deemed for the purpose of taxation personal estate within this state, and shall be assessed as such to the owner thereof in the town, village, or ward in which such owners shall reside at the time such assessment shall be made. This statute was passed the year subsequent to the decision of the case of People ex rel. Jefferson v. Smith, and the inference is not a labored one that concludes that the law was enacted to meet that decision.
“ In that case the relator, a resident of the village of Warsaw in this state, was the absolute owner of securities which the assessors had attempted to reach for the purpose of taxation, but such securities were in the possession of agents residing without the state, and by the laws of the states where such agents resided the securities were liable to be taxed in those states. It was held by the court that the relator was not liable to be assessed for such securities. The idea that personal property follows the situs or residence of the owner, while in some cases a proper legal fiction to be indulged in for the purposes of justice, was held not to apply in such a case for the purpose of imposing a tax upon a security not within the state and not protected by our laws.
“ The case here presented is one where the persons assessed are not the absolute owners of the property, but are the trustees, and have only a representative or official interest therein; and but two of the four are residents within the state, while the *462 third resides in another state and also has the custody and control of the property, and the beneficiaries also are nonresidents. Does the act of 1883 meet such a case? We think not. It is not a debt due and owing to them in connection with another who is a joint owner and who is not a resident ■ within this state, and such other has possession of the securities. The statute means that the debt must be one which is solely due or owing to residents of this state. Nor do we think that the statute meant to include as owners persons who were trustees merely, and thus assess them for property not held by them and not within this state.
“ Generally, a man is not spoken of as the owner of property who merely holds it as a trustee and in a representative capacity. He has the legal title and he is to be assessed for it when it is within the state, but this is by express provision of the statute and such provision is not mentioned in the case of a trustee whose trust property is outside of the state and not in his possession.
“ The contention of counsel for the tax commissioners would render property liable to double or even triple, or still greater taxation, if the laws of other states were like ours and there were three or more trustees living in as many different states. The statute as it is made leads to injustice in the double taxation of personal property, once to its absolute owner in this state,' and again in the hands of his agents in the shape of securities in their custody and control in other states. It is not for courts to widen the possibility of injustice which may be perpetrated under a statute by giving it a construction not only not called for by its language, but forced and unnatural under the circumstances. It is unnecessary to go over the argument arising from an examination of the whole law of assessment for the purpose of showing that the construction adopted by us is the correct one. We think that it is plainly to be seen that the construction adopted by the learned General Term may lead to such a perversion of justice that no court ought to adopt it unless constrained by *463 the plainest language of the statute. We are of the opinion that such is not the language of this one.
“ This ease is an illustration of the inequitable consequences arising from the construction of the court below ? The real acting trustee lives in New Jersey. He has no possession and control of the securities, which are bonds and mortgages upon the lands in other states, and the beneficiaries are all non-residents of this state, and yet by the action of the tax commissioners, because two of the trustees are residents of this state, although they have neither possession or control of the property, and none of it in this state, the trustee of the estate must pay tribute to us. We think not.”
There was a third case cited in the 50th Maryland, p. 377. There was quite a large number of cases went up to the Court of Appeals of Maryland. Commencing on page 354 is a very learned discussion of the law of taxation and the principles upon which it depends, and by which it is to be governed. And at page 396 is a case of Appeal Tax Court v. Gill et al., the court of appeals, following, as it-says, the decision that was had by the court of appeals in the 29th Maryland, held that -where property was in the possession of three trustees, two of which were residents of the state, and one a resident of New York, and the property was without the state — or lai’gely in companies organized out of the state of Maryland — the court ordered a division to be made, two-thirds of the property to be taxed in Maryland. Turning to the case in the 29th Maryland, we find at pages 48 and 49 that the court held in that case that where two trustees hold property, a portion of which was, perhaps all, in the city of Baltimore, where one of the trustees lived, while the other lived in the county of Baltimore, outside of the the city limits, that while there was no statute of that state that governed the case, the court thought upon principles of equity the property should be taxed one-half within the city of Baltimore-; one half within the county. I desire to call attention to one or two Ohio cases, and then I will close.
*464 The case of Grant v. Jones, in the 39 Ohio St., page 506, I think has a bearing on the question. In that case it was shown that Grant was a peddler. He was born in Ireland, came to Canada, lived a few years in that country, and then commenced to peddle through the states ; went from place to place, and had no fixed residence. Said he had no residence anywhere, and it seems to have been true. Perhaps once a year he would come to the county of Butler in this state, where he seems to have had some friends residing, and he would stop a few days with these friends, and from time to time commenced to invest money in notes and mortgages — in notes secured by mortgages upon property in Butler county. The interest came due about the same time of the year, and about that period he would return, collect his interest, and proceed upon his way. After a time the authorities thought he ought to be taxed in the county of Butler, and proceeded to make return of the property for taxation, and thereupon he contested their right to do so. I will read a little from this decision. The court say, p. 513:
“ The tax law of 1859 with its amendments was in force until the revision that governs the case. Section 1 provides that “ All property whether real or personal in this state, and all monies, credits, investments in bonds, stocks, joint companies or otherwise, of persons residing therein, shall be subject to taxation,” — (they italicise the words, “ in this state,” and the words “ persons residing therein ”) — “ whether held for themselves or as guardians, trustees or agents, without regard to the situs of the state, county, municipal authority, or body, whether within or without the state issuing them. These provisions came under review in Worthington v. Sebastian, 25 Ohio St. 1, where it was held that the sitns of the creditor and not of the debtor is to determine where credits, investments in bonds, etc., are to be taxed, and that the tax is to be imposed by the law of the creditor’s place of residence, and not by that of the debtor.”
“ This is the same view as was taken by the Supreme Court *465 .of The United States in Railroad Company v. Pennsylvania, 15 Wallace 300, where the state undertook to tax debts owing by a corporation resident of the state without regard to the residence of the creditor. It was further held that the power of the state to tax is limited to persons, property, and business within its'jurisdietion •, and therefore non-resident creditors were not subject to taxation on bonds held by them though secured by mortgage or real estate within the state.”
“ The point was again decided by this court in Prairie v. Bauer, 36 Ohio St. 28. It was there held that the residence of the owner of shares of stock in a foreign corporation determines the right of this state to tax such shares, and if he resided in Ohio they were taxable here though the capital was taxed in that state where the corporation was located. It is there said the same principal governs the chose in action, and that for the purpose of taxation its situs is that of the domicile of the owner although- the debt is secured by mortgage upon realty in another state.” The discussions and decisions on this point are so recent and elaborate that it is needless to do more than to refer to a few of them. Tappon v. Merehant’s National Bank, 19 Wall. 499; County of Northampton v. Whetwell, 49 Penn. St. 526 ; State v. Braum, 3 Zab. 484; City of Newark v. Assessors, 30 N. J. Law 13 ; Kirkland v. Hotchkiss, 42 Conn. 426. The last case came before the Supreme Court of the United States, and will be found reported in 100 U. S. 491, where it was again held that for the purpose of taxation a debt has its situs at the residence of the creditor, and the doctrine in 15 Wallace (supra) is repeated. “ Our statute clearly adopts that rule. Whenever the person holding such choses in action resides in Ohio, he must list for taxation such credits, whether he holds them as owner, guardian, trustee or agent. If they are held within the state in either oapaeity, they are within the jurisdiction of the state for the purposes of taxation. If they are not so held, but are owned and held *466 by a non-resident, they are not subject to taxation.” “ What constitutes a person a resident of Ohio, for the purpose of voting and admission to the publie schools and benevolent institutions of the state, for the administration of estates and in other cases, has been a frequent matter for consideration in courts. There is no substantial difference between the words residence and domicile in regard to these matters, though they are not always synonymous. For business purposes, and perhaps for purposes of taxation, a man may haye more than one residence, but he can have but one domicile.”
I think this case of Grant v. Jones, in the clause I have read here, clearly recognizes the fact that the property itself must be situated within the state. The court says: “ Our statute clearly adopts the rule, whenever the person holding such choses in action resides in Ohio, he must list for taxation such credits, whether he holds them as owner, guardian, trustee or agent. If they are held wdthin the state in either capacity, they are within the jurisdiction of the state for purposes of taxation.” ¡
The rule laid down in the 15th Wallace, 300, as a general statement seems to be correct and to be followed by the various courts that have discussed the question. “ It was there further held that the power of the state to tax, is limited to . . . property . . . that is held within its jurisdiction.” The real question we have to decide, as we think, in this ease, is, whether this property in question is within the jurisdiction of the state in such a sense that it is properly subject to taxation:
In the case I have read, in the Pennsylvania State Report, it will be perceived that the supreme court of that state, held that where the trustee had bought the property within the state, had loaned it and held the notes and mortgages in her own name, that the property was so far, under the protection of its laws, that it should be taxed within the state, but that the property not brought into the state, was not subject to taxatiou.
*467 That theory is followed in this state with regard to the property of non-residents, which is invested here by an agent, who loans it in his own name. In such cases the property is taxable, as we understand, within the state of Ohio, by the state authorities. By that act the property is brought within the jurisdiction of the state.
In the case at bar, the facts of the case clearly show that the evidence of indebtedness, stocks and bonds, were never brought into the state of Ohio, never came within its jurisdiction in any manner or form, never came within its jurisdiction and laws. Mr. Moss does not hold the property by virtue of the laws of O.hio, never brought it here for investment, never invested it here in any manner or form, and we think that there is a broad distinction between a party who holds property in his own right, invested in personal securities in another state, and thereby subjects it to the laws of his domicile, and a party who holds property in trust, which is situated or invested in another state and is under the control of the laws of the other state. It would seem to be unjust to an estate of this kind, to subject it to the rule of taxation of this state.
Mr. Hawk became acquainted with Mr. Moss in the state of New York, Mr. Moss residing there at least half of the time — perhaps more than half of his time — he kept house there, his family was there; he spent his winters in New York, his summers here. For purposes'of his own, either as-a matter of taste, or because it was his birthplace, or something of that kind, he chose to consider Ohio as his residence,, and voted here. He might, without any change of situation, as far as he was concerned, have elected to vote in New York ; if he had chosen to have blew York as his domicile, he could have done it by saying so and acting accordingly.
Under this condition of affairs, Hawk appointed him as one of his executors. I suppose it is the last thing he thought of doing to place his property within the jurisdiction of the state of Ohio for any purpose whatever, and it seems to us that the *468 true law, tbe case, the equities of the case, the right of the case is with the plaintiffs in this action, and we therefore hold that the plaintiff is entitled to his injunction.
It is said that the property was not taxed to the full value of the property within the state of New York. We think that makes no difference in regard to the question that is to be decided here. The property is, as we hold, subject to taxation in the state of New York. If they do not tax it to the full amount of the property, or to the full amount they ought to tax it, or to the full amount to which they have the right to tax it, it is the fault of the authorities there and does not at all vary or change or alter the question of jurisdiction over the property or the right’to tax it, or the place where it should be taxed.